IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JAMES DOUGLAS MCKNIGHT                                    PETITIONER

v.                                    CIVIL ACTION NO. 5:17-CV-118-DCB-JCG

WARDEN BRIAN LADNER                                       RESPONDENT

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the Petition under 28 U.S.C. § 2254 for a Writ of
Habeas Corpus by a Person in State Custody, filed by Petitioner James Douglas
McKnight. The Petition challenges McKnight's 2013 conviction for murder and
possession of a firearm by a convicted felon. Having considered the submissions of
the parties, the record, and relevant legal authority, the undersigned United States
Magistrate Judge recommends that Petitioner's request for relief pursuant to 28
U.S.C. § 2254 be denied. McKnight has not demonstrated that he is entitled to
federal habeas relief.

## I. BACKGROUND

McKnight is a postconviction inmate in the custody of the Mississippi
Department of Corrections. After a jury trial in the Circuit Court of Pike County,
Mississippi, McKnight was convicted of murder and possession of a firearm by a
convicted felon on June 13, 2013. He was sentenced as a habitual offender to life in
prison without the possibility of parole on each conviction, with sentences to run
consecutively. After his motions for judgment notwithstanding the verdict and for a
new trial were denied, McKnight appealed, and the Mississippi Court of Appeals

affirmed his conviction. *McKnight v. State*, 187 So. 3d 635 (Miss. Ct. App. 2015).

McKnight, who was represented by an attorney before the Court of Appeals, raised seventeen issues during his direct appeal:

1. whether the evidence was sufficient to sustain the verdict;

2. whether the verdict was against the overwhelming weight of the evidence;

3. whether probable cause existed to arrest McKnight;

4. whether the trial court should have suppressed evidence obtained from his vehicle and mobile phone;

5. whether the trial court erred in admitting evidence from photographic lineups;

6. whether McKnight received ineffective assistance of counsel;

7. whether the trial court should have ordered a mental evaluation;

8. whether the trial court should have granted a change of venue;

9. whether McKnight was prejudiced by the first judge's recusal or the public defender's office withdrawal;

10. whether McKnight's right to a speedy trial was violated;

11. whether the trial court erred in admitting prior convictions or bad acts;

12. whether the trial court should have given a jury instruction presenting McKnight's theory of defense;

13. whether the trial court erred in admitting hearsay testimony;

14. whether the statute preventing possession of a firearm by a convicted felon violates the Second Amendment;

15. whether McKnight's sentences constituted cruel and unusual punishment;

16. whether the habitual offender statute is unconstitutional; and

17. whether cumulative errors and plain error warranted reversal or a new trial.

The Mississippi Court of Appeals found each of these issues to be without merit and affirmed his conviction. After his Motion for Rehearing was denied, McKnight, proceeding *pro se*, filed a Petition for Writ of Certiorari before the Mississippi Supreme Court raising three grounds for relief: (1) hearsay evidence was improperly admitted; (2) his conviction rested on the perjured testimony of a co-defendant; and (3) he was denied compulsory process to obtain witnesses in his favor. The Mississippi Supreme Court denied his Petition on March 31, 2016. McKnight then filed a Motion for Post-Conviction Collateral Relief before the Mississippi Supreme Court on April 26, 2017. This Motion raised thirty-seven grounds for relief.

1. He was a victim of malicious prosecution.

2. He should be excused for any failure to raise issues at a prior stage.

3. He received ineffective assistance of both trial and appellate counsel.

4. He received ineffective assistance of counsel at trial because trial counsel worked with the prosecution in suppressing evidence about the victim's murder.

5. He received ineffective assistance of counsel because counsel suppressed or withheld exculpatory evidence.

6. He received ineffective assistance of counsel because counsel did not present evidence refuting "well known perjured testimony."

7. He received ineffective assistance of counsel at both the trial and appellate levels because counsel did not investigate or present evidence concerning "perjured hearsay testimony of a recent fabrication."

8. He received ineffective assistance due to counsel assisting in prosecutorial misconduct.

9. He received ineffective assistance of counsel when counsel did not present evidence concerning his co-defendant's involvement.

10. He was denied due process because of inadmissible hearsay.

11. He received ineffective assistance of counsel when counsel colluded with a detective to create a false impression of the facts.

12. He received ineffective assistance of counsel on appeal when counsel "improperly adopted and fostered a misstatement of fact in appellate brief."

13. He received ineffective assistance of counsel because counsel improperly initiated the recusal of the first assigned trial judge.

14. The first assigned trial judge abused his discretion in recusing.

15. The trial judge was not disinterested.

16. McKnight was denied due process of law because the trial judge admitted interest in the case.

17. He received ineffective assistance of counsel when counsel filed a motion to dismiss.

18. He was denied due process when the state used a surprise witness.

19. He received ineffective assistance of counsel when trial counsel did not object to the introduction of two state witnesses as "blood relatives."

20. The Court of Appeals ruling on Petitioner's right to a speedy trial was "based on false facts."

21. He received ineffective assistance of counsel when counsel did not object to the prosecution "vouching" for a witness.

22. He received ineffective assistance of counsel because counsel did not object to Petitioner being "held to answer for a crime he was not properly on trial to answer."

23. He was denied due process and received ineffective assistance of counsel when counsel aided the state in allowing perjured testimony and in suppressing evidence of inducements offered to a state witness.

24. He received ineffective assistance of counsel in relation to the "egregious prosecutorial misconduct."

25. He received ineffective assistance of counsel because counsel failed to object to the prosecution's "urging" of false information to the jury.

26. He received ineffective assistance of counsel because counsel did not present evidence to refute perjured testimony.

27. He received ineffective assistance of counsel when counsel did not object to the admission of shell casing evidence.

28. He received ineffective assistance of counsel because counsel did not "demand a show and tell" of a mystery bag of evidence.

29. He received ineffective assistance of counsel when counsel did not object to the autopsy report.

30. The state pathologist improperly assisted the State.

31. A detective improperly assisted the State in planting evidence.

32. He received ineffective assistance of counsel when counsel did not request and pursue a "cautionary accomplice testimony instruction" or a "corroboration instruction."

33. The trial court erred in denying McKnight his counsel of choice and a continuance for that counsel to prepare for trial.

34. He received ineffective assistance of counsel when counsel "suppressed evidence of critical witnesses thereby denying compulsory process."

35. He was denied due process when a potential witness was intimidated.

36. He received ineffective assistance of counsel when he was denied discovery.

37. He received ineffective assistance of counsel on appeal because counsel made numerous misstatements of fact.

The Mississippi Supreme Court found that his claims of ineffective

assistance of counsel were without merit, and the other claims were procedurally

barred. On September 5, 2017, McKnight filed a 28 U.S.C. § 2254 Petition for Writ

of Habeas Corpus (ECF No. 1). He then filed an Amended Petition (ECF No. 5) on

October 10, 2017, in which he raises thirty-eight grounds for relief.

1. He alleges he was denied effective assistance of counsel and due process as trial counsel did not present material, exculpatory, or impeachment evidence.

2. He alleges he was denied effective assistance of counsel because trial counsel did not present evidence.

3. He alleges he was denied due process because the trial judge had a personal interest in the case.

4. He alleges he was denied due process because forensic pathologist Mark Levaughn improperly re-drafted his autopsy report and used photoshop on one autopsy photo.

5. He alleges he was denied effective assistance of counsel and due process because trial counsel "sabotaged" his right to a speedy trial.

6. He alleges he was denied effective assistance of counsel and due process when counsel did not object to a surprise witness or request a continuance.

7. He alleges he was denied effective assistance of counsel when trial counsel failed to object to the false introduction of two witnesses as "blood relatives."

8. He alleges he was denied effective assistance of counsel because counsel did not object to McKnight's "being held to answer for crimes he was not properly on trial to answer," namely, fleeing prosecution and stalking the victim.

9. He alleges he was denied his counsel of his choice, as the trial court refused to grant a continuance to allow new counsel to prepare for trial.

10. He alleges he was denied due process under the Fourteenth Amendment due to the intimidation of a defense witness.

11. He alleges he was denied effective assistance of counsel and due process when trial counsel withheld discovery.

12. He alleges he was denied effective assistance of counsel, as trial counsel did not object to or attempt to impeach "well known perjured testimony" of witnesses for the prosecution.

6

13. He alleges he was denied effective assistance of counsel on appeal as appellate counsel misstated facts in his brief.

14. He alleges he was denied effective assistance of counsel when trial counsel sought the recusal of the original trial judge.

15. He alleges he was denied due process when the original trial judge recused.

16. He alleges he was denied effective assistance of counsel and due process when trial counsel and the prosecution suppressed information concerning the inducements offered to a state witness in exchange for his testimony.

17. He alleges he was denied effective assistance of counsel when trial counsel did not present evidence concerning the true cause of the victim's death.

18. He alleges he was denied effective assistance of counsel, as trial counsel did not object to the prosecution "vouching" for a state witness during closing.

19. He alleges he was denied effective assistance of counsel when trial counsel recalled a state witness as the only witness for defense.

20. He alleges he was denied effective assistance of counsel when trial counsel did not introduce a video of the victim stealing prescription drugs.

21. He alleges he was denied effective assistance of counsel, as trial counsel did not seek an accomplice testimony instruction or a corroboration instruction.

22. He alleges he was denied effective assistance of counsel when trial counsel did not investigate or call Julius Bruce Moore III as a witness.

23. He alleges he was denied effective assistance of counsel and due process when trial counsel did not investigate or call potential defense witnesses.

24. He alleges he was denied effective assistance of counsel because trial counsel did not object to inconsistent shell casing evidence.

25. He alleges he was denied effective assistance of counsel and due process when trial counsel did not conduct an on the record investigation of an unidentified evidence bag attached to an introduced piece of evidence.

26. He alleges he was denied effective assistance of counsel and due process when counsel did not object to the prosecution's use of "well known false misleading information" during closing.

27. It appears McKnight did not include a Ground 27; however, the Court will maintain McKnight's numbering in the interest of clarity.

28. He alleges his right to due process was violated when the trial judge did not conduct an investigation of the unidentified evidence bag.

29. He alleges he was denied effective assistance of counsel when trial counsel did not object to the introduction Dr. Levaughn's testimony, particularly an allegedly photoshopped picture and re-drafted report.

30. He alleges he was denied effective assistance of counsel because trial counsel did not fulfill the promises he made to the jury during opening statements.

31. He alleges he was denied effective assistance of counsel on appeal because appellate counsel did not raise Ground 30 on direct appeal.

32. He alleges he was denied due process when the State introduced "well known perjured testimony."

33. He alleges he was denied effective assistance of counsel on appeal when appellate counsel did not raise Ground 32 on direct appeal.

34. He alleges he was denied due process, as the trial court should have dismissed the case when his right to a speedy trial was violated.

35. He alleges he was denied due process when the Mississippi Court of Appeals concluded that the introduction of hearsay testimony was harmless error.

36. McKnight did not include a Ground 36.

37. He alleges he was denied effective assistance of counsel on appeal as counsel did not argue that McKnight was denied the right to confront witnesses against him due to the introduction of inadmissible hearsay.

38. McKnight did not include a Ground 38.

39. He alleges he was denied effective assistance of counsel on appeal because appellate counsel did not allege that trial counsel colluded with a detective.

40. He alleges he was denied effective assistance of counsel when trial counsel did not request a continuance after learning of a new state witness.

41. He alleges he was denied effective assistance of counsel on appeal as appellate counsel did not raise Ground 40 on direct appeal.

Respondent filed his Answer (ECF No. 10) on March 9, 2018. In it, he alleges that McKnight did not exhaust Ground 19; Grounds 3, 4, 9, 10, 28, and 32 rest on adequate state law grounds; and the remaining grounds for relief were decided on the merits in state court and the state court's decision was not an unreasonable application of federal law. McKnight filed a Motion to Amend his Petition (ECF No. 21) on October 10, 2018. Although the Court denied his Motion, the Court ruled that the attached exhibits (ECF Nos. 21-1 & 21-2) would be construed as his Reply (Text Only Order of October 29, 2018). McKnight makes additional arguments concerning Grounds 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 23, 35, and 39; however, he also states that the "Court may strike" Grounds 19 and 22 (ECF No. 21-2 at 148). As such, the Court will not consider these two Grounds.

## II. DISCUSSION

### A. <u>Standard of Review</u>

Before considering the merits of a petition under 28 U.S.C. § 2254 for writ of habeas corpus, the Court must first determine if all procedural steps necessary to preserve each issue raised for federal review have been taken. First, the petition must be timely filed with the Court in compliance with 28 U.S.C. § 2244(d)(1).[1] Second, a writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b)(1). To exhaust a federal constitutional claim, a petitioner must "fairly present" in state court both the operative facts and federal legal theory of his or her

---

[1] There is no challenge to the timeliness of the Petition.

claim in a procedurally proper manner. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999).

As a matter of comity and federalism, federal courts generally may not review a state court's denial of a federal constitutional claim if the state court's decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin,* 562 U.S. 307, 316 (2011); (quoting *Beard v. Kindler,* 558 U.S. 53, 60-61 (2009)). A federal court may also find claims procedurally defaulted if the petitioner failed to present them in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Coleman,* 501 U.S. at 735 n.1). Federal courts retain the power to consider the merits of a procedurally defaulted claim if the petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation or shows that a fundamental miscarriage of justice would result if the claim is not heard on the merits in federal court. *See Schlup v. Delo,* 513 U.S. 298, 324-27 (1995).

Substantively, the issue in a federal habeas proceeding is not whether there was an error in applying state law but instead whether there has been a denial of rights protected by the United States Constitution. *Estelle v. McGuire,* 502 U.S. 62,

10

67-68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* The federal courts do not function as super appellate courts over the states to review errors under state law and may not correct errors of state law unless they also violate the constitutional rights of an accused. *See Smith v. Phillips,* 455 U.S. 209, 221 (1982); *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981).

Even in matters affecting constitutional rights, federal courts have a very limited scope of review. The Court's authority to grant relief to a person held in custody pursuant to a state judgment is narrowly circumscribed by 28 U.S.C. § 2254(d), which provides that a writ of habeas corpus shall not be granted unless the state court adjudication of the claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As recently summarized by the Fifth Circuit Court of Appeals:

> Because "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning," there are three ways a federal court can grant habeas relief: (1) if the state court decision was contrary to clearly established Supreme Court law; (2) if the state court decision involved an unreasonable application of clearly established Supreme Court law; or (3) if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. "AEDPA's standard is intentionally difficult to meet."

*Poree v. Collins,* 866 F.3d 235, 245 (5th Cir. 2017) (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)). The state court's factual findings are presumed to be correct. The petitioner may rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. <u>Analysis</u>**

**1.  <u>Grounds 3, 4, 9, 10, 28, and 32</u>**

Respondent alleges that Grounds 3, 4, 9, 10, 28, and 32 are procedurally barred, because when McKnight raised them in his Motion for Post-Conviction Collateral Relief in State Court, the Mississippi Supreme Court held that they were procedurally barred from review under Miss. Code Ann. § 99-39-21(1), which provides that a failure to raise claims at trial and/or on direct appeal constitutes a waiver of those claims and a procedural bar, unless the individuals shows cause and actual prejudice.

"Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, this court may not review the prisoner's habeas petition." *Stokes v. Anderson*, 123 F.3d 858, 859 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 729). However, an exception exists if the prisoner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.*

Any such state procedural bar must be "firmly established and regularly

followed." *Beard,* 558 U.S. at 60-61 (internal quotations omitted). The Fifth Circuit has previously held that Miss. Code Ann. § 99-39-21(1) is "an independent and adequate state procedural rule." *Stokes*, 123 F.3d at 861; *see also Nixon v. Epps*, 405 F.3d 318, 323 (5th Cir. 2005). McKnight "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his direct appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Stokes*, 123 F.3d at 860. McKnight does not address this issue; he merely argues that ineffective assistance of counsel satisfies the cause and prejudice requirements of the exception or, alternatively, failure to consider these claims would result in a fundamental miscarriage of justice (ECF No. 21-2 at 67-70).

Although McKnight repeatedly argues that he should be excused from his failure to raise these claims because he received ineffective assistance of counsel, McKnight does not address the fact that he filed his state *certiorari* petition while proceeding *pro se* and only raised three issues. Therefore, McKnight has not demonstrated sufficient cause to overcome the adequate state procedural bar, especially because the Mississippi Courts found his ineffective assistance of counsel claims to be without merit. *See Edwards v. Carpenter*, 529 U.S. 446, 450-54 (2000). Further, McKnight has not demonstrated that the failure to consider these claims will result in a fundamental miscarriage of justice, as he must "show that he has a colorable claim of factual innocence." *Shore v. Davis*, 845 F.3d 627, 633, n.4 (5th Cir. 2017) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). McKnight has

not done so; therefore, Grounds 3, 4, 9, 10, 28, and 32 are procedurally barred.

### 2. **Remaining Grounds**

Respondent submits that McKnight's remaining Grounds for Relief were decided on the merits in state court, and those determinations were not an unreasonable application of the law. Grounds 1, 2, 5, 6, 7, 8, 11, 12, 14, 16, 17, 18, 20, 21, 23, 24, 25, 26, 29, 30, and 40 concern ineffective assistance of trial counsel. Grounds 13, 31, 33, 37, 39, and 41 concern ineffective assistance of appellate counsel. Closely related to McKnight's ineffective assistance of counsel claims are Ground 15, recusal of the original trial judge, and Ground 34, McKnight's right to a speedy trial. Finally, Ground 35 concerns the Mississippi Court of Appeal's harmless error analysis with respect to hearsay testimony.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." This right to counsel "is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To show ineffective assistance of counsel, McKnight "must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Further, he must show that the performance prejudiced his defense, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. However, "[j]udicial scrutiny of counsel's performance must be

14

highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

However, McKnight is challenging his counsel's performance in a habeas petition. The Fifth Circuit has stated:

> the test for federal habeas purposes is *not* whether [the petitioner made the showing required under *Strickland*]. Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim.

*Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004) (quoting *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003)) (emphasis and alterations in original). "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

McKnight first raises numerous issues concerning his trial counsel. These claims can be classified as relating to evidence (Grounds 1, 2, 16, 17, 20, and 25), his right to a speedy trial (Grounds 5 and 34), counsel's failure to object (Grounds 6, 7, 8, 12, 18, 24, 26, 29, and 40), the withholding of discovery (Ground 11), the recusal of the trial judge (Grounds 14 and 15), jury instructions (Ground 21), witnesses (Ground 23), and promises made during opening statements (Ground 30). He then makes various claims concerning his appellate counsel's alleged misstatements of

15

facts and failure to raise issues on appeal (Grounds 13, 31, 33, 37, 39 and 40). Finally, he makes one argument concerning the Mississippi Court of Appeals' harmless error analysis (Ground 34).

### a.    <u>Evidentiary Grounds</u>

McKnight alleges that his trial counsel was ineffective for failing to present "material, exculpatory, impeachment evidence, etc." (Grounds 1 and 2), particularly a video of the victim stealing prescription drugs (Ground 20) and evidence concerning the "root cause" of the murder (Ground 17). Essentially, McKnight alleges that co-defendant Alreco Hill and the victim were responsible for stealing prescription drugs, and Hill committed the murder to cover up that crime. McKnight also alleges that there were discrepancies concerning the number of shots fired. He alleges that counsel had this information and should have introduced it at trial. Respondent argues that McKnight has not shown that this evidence was admissible, his allegations are merely conclusory, and determining what evidence to admit is a matter of trial strategy.

It is clear from the record that McKnight's trial counsel questioned Hill about selling pills (ECF No. 11-4 at 89-92) and attempted to present an alternate theory of the crime. He also cross-examined witnesses concerning the number of shots fired (ECF No. 11-4 at 110-11). Ultimately, "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance." *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (quoting *Rector v. Johnson*, 120

F.3d 551, 564 (5th Cir. 1997)). Particularly considering the double deference afforded to counsel's decisions in habeas cases, McKnight is not entitled to relief on Grounds 1, 2, 17, or 20.

McKnight also alleges that his counsel helped suppress evidence concerning the inducements offered to Hill in exchange for his testimony (Ground 16). However, the record reflects that the prosecution discussed Hill's plea agreement and McKnight's trial counsel cross-examined Hill about it (ECF No. 11-4 at 78-80, 90-91). McKnight's disagreement with trial counsel's strategy does not render the state court's decision an unreasonable application of clearly established federal law, as the jury was clearly made aware of Hill's plea. Therefore, Ground 16 does not warrant habeas relief.

McKnight's last evidentiary issue involves the unidentified evidence bag that was attached to introduced evidence (Ground 25). During direct examination of Greg Nester, a crime scene investigator with the Mississippi Bureau of Investigation, the prosecution asked him about a shell casing. He testified that the exhibit contained the shell casing, and the seal had not been tampered with. However, he also testified that "[t]here is some additional bag with paperwork attached to the back that is not mine" (ECF No. 11-5 at 54). McKnight alleges that his counsel should have demanded "a show and tell" of that bag. Counsel asked to voir dire the witness, but after the trial judge stated that the notation "with some additional paperwork" would be included, counsel merely reserved his right to cross-examination (ECF No. 11-5 at 55). At no point was the paperwork or any additional

"mystery" evidence admitted. McKnight has not shown any potential prejudice from the evidence being admitted with the notation of "some additional paperwork," and trial counsel's strategic decision does not constitute ineffective assistance of counsel. Therefore, Ground 25 does not warrant habeas relief.

### b.    Speedy Trial Grounds

McKnight next alleges that he was denied effective assistance of counsel when counsel "sabotaged his right to a speedy trial" (Ground 5) and was denied due process when the trial court did not dismiss his case because of the speedy trial violation (Ground 34). McKnight alleges that he asserted his right to a speedy trial when he met his first appointed counsel; however, it appears that this assertion was merely a discussion of the right with his counsel, not a declaration to the court. After his first appointed counsel withdrew due to a conflict of interest, McKnight alleges that new counsel sabotaged his right to a speedy trial by initiating the recusal of the original trial judge and filing a motion to dismiss right before trial began. He also alleges that his due process rights were violated when the trial court did not grant the motion to dismiss.

The Mississippi Court of Appeals addressed this issue and properly weighed the factors set out in *Barker v. Wingo*, 407 U.S. 514 (1972). It concluded that the length of delay was sufficient to presume prejudice; however, it found that the main cause was the substitution of defense counsel, with a short portion caused by the first trial judge's recusal. Because the prosecution was not responsible, the Mississippi Court of Appeals found that this factor weighed against McKnight.

It also found that the third factor, assertion of the right, weighed against McKnight, as he did not assert his right until the motion to dismiss. Further, it concluded that the motion was not equivalent to a demand for a speedy trial. Although McKnight argues he informed counsel of his desire for a speedy trial early on, the "burden is 'on the defendant to alert the *government* of his grievances.'" *Amos v. Thornton*, 646 F.3d 199, 207 (5th Cir. 2011) (quoting *Robinson v. Whitley*, 2 F.3d 562, 569 (5th Cir. 1993)) (emphasis added).

Finally, the Mississippi Court of Appeals found that McKnight did not suffer any prejudice from the delay and concluded that the fourth factor also weighed against McKnight. The Mississippi Court of Appeals decision is not an unreasonable application of federal law. Because McKnight's speedy trial claim is without merit, he is foreclosed from raising an ineffective assistance of counsel claim regarding that right. *Id.* at 209-10. Therefore, McKnight is not entitled to habeas relief on Grounds 5 or 34.

### c.    Recusal Grounds

Closely related to McKnight's claim concerning his right to a speedy trial is his allegation that he received ineffective assistance of counsel when trial counsel initiated the recusal of the original trial judge (Ground 14) and his claim that he was denied due process under the Fourteenth Amendment when the trial judge recused (Ground 15). The original trial judge recused pursuant to a circuit policy because he had signed a search warrant related to McKnight's case. McKnight alleges that after the recusal, the "evidence began to change, he was hurried into

19

trial, denied the right to counsel of his choice with time to prepare for trial, [and] evidence of material, exculpatory, impeachment value was suppressed . . . ."

On direct appeal, the Mississippi Court of Appeals reviewed the judge's decision under an abuse of discretion standard and found that McKnight was not prejudiced by his recusal. *McKnight*, 187 So. 3d at 647. Not all questions of recusal "involve constitutional validity." *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). His argument that the judge should not have recused does not rise to the level of a constitutional violation, but even if it did, the state court's decision was not an unreasonable application of the law. Because the judge did not violate McKnight's constitutional rights when he recused, McKnight did not receive ineffective assistance of counsel when counsel pointed out the trial judge's prior involvement in the case. Therefore, McKnight is not entitled to relief on Grounds 14 or 15.

### d.    Objection Grounds

McKnight next alleges that he received ineffective assistance of counsel when trial counsel failed to object at various stages of the proceedings. He alleges that counsel should have objected to a "surprise" state witness (Ground 6) and should have requested a continuance (Ground 40). He also alleges that counsel should have objected to the introduction of two witnesses as McKnight's "blood relatives" (Ground 7), perjured testimony (Ground 12), inconsistent shell casing evidence (Ground 24); and the testimony of Dr. Levaughn (Ground 29). He then argues that counsel should have objected to several statements of the prosecution during closing (Grounds 8, 18, and 26).

First, McKnight argues in Ground 6 that counsel informed him about a week before trial that Terry Williams would testify. He argues that counsel should have objected and requested a continuance. In Ground 40, McKnight argues that he received ineffective assistance when counsel did not request a continuance because of Williams. However, Williams appeared on the prosecution's witness list for one of the earlier trial settings (ECF No. 11-1 at 46). He was also listed on the witness list for the June 11, 2013 trial setting, which the state submitted on May 22, 2013 (ECF No. 11-1 at 49-50). Therefore, Williams was not a surprise witness, and there would be no grounds for such an objection or a continuance. The record also reflects that McKnight's counsel cross-examined Williams about a prior conversation they had (ECF No. 11-4 at 126-33). Because Williams was not a surprise witness, counsel had the opportunity to talk to him prior to trial, and counsel was prepared to cross-examine him, McKnight has not shown that he received ineffective assistance of counsel. Grounds 6 and 40 are without merit.

In Ground 7, McKnight alleges he received ineffective assistance of counsel because counsel did not object to the introduction of Terry and Bruce Williams as his uncles. He states that they were his stepfather's brothers. The record reflects that Bruce Williams stated he was McKnight's uncle (ECF No. 11-4 at 25). Terry Williams stated that McKnight was his nephew (ECF No. 11-4 at 118). Neither witness testified that they were uncles by blood. Because uncles are not necessarily related by blood and nothing in the record contradicted their testimony, an objection would have been meritless. Counsel cannot be ineffective for failing to raise a

21

meritless issue. *States v. Hall*, 711 Fed. App'x 198, 201 (5th Cir. 2017) (citing *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999)). McKnight is not entitled to habeas relief on Ground 7.

In Ground 12, McKnight argues that counsel was ineffective for failing to object to the allegedly false testimony of Hill, David Wells, Shannon Sullivan, and Katrina Harris. Respondent submits that counsel's failure to object was trial strategy. This Court agrees. The state court record reflects that McKnight's counsel diligently cross-examined these witnesses and attempted to reveal inconsistencies in their testimony (ECF Nos. 11-4 at 58-61, 81-94, 108-11 & 11-5 at 12-20). Ultimately, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (quoting *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006)). Particularly when considering the deference afforded to state court decisions on issues of ineffective assistance of counsel, McKnight is not entitled to relief on Ground 12.

McKnight's claim for relief in Ground 24 must fail for the same reasons. He argues that Nester testified that the shell casings at the crime scene and in McKnight's vehicle were different. He argues that counsel should have objected instead of waiting "until closing argument to make casual mention of the inconsistent evidence." The record indicates that counsel cross-examined Nester about the different shell casings (ECF No. 11-5 at 61-64) and then made direct

reference to the different shell casings during closing (ECF No. 11-6 at 34). Counsel did not ignore the inconsistency; he chose to cross-examine the witness about it and argue the inconsistency in closing. This is the type of strategy that cannot be the basis of an ineffective assistance claim. Therefore, Ground 24 is without merit.

McKnight also alleges that he received ineffective assistance of counsel when counsel did not object to the "assumed expert testimony" of Dr. Levaughn, particularly an allegedly photoshopped picture and a "bogus" autopsy report. The prosecution called Dr. Levaughn as a witness, and he testified that he had worked as a pathologist for twenty-nine or thirty years, had completed medical school, including a residency in pathology, was certified and licensed, and had testified as an expert about once a month for the past twenty-nine or thirty years. Thereafter, he was admitted as an expert without any objection from the defense (ECF No. 11-5 at 374-75). Although McKnight references the "assumed expert testimony," it does not appear that he takes issue with Dr. Levaughn's qualifications.

Instead, he argues that Dr. Levaughn should not have been permitted to testify about his corrected autopsy report or a particular photograph. As to the photograph, McKnight has provided no arguments or evidence about what part was photoshopped. As such, this is a conclusory allegation, which fails to "raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). As to the autopsy report, Dr. Levaughn testified that when reviewing for the trial, he realized he had made a typographical error and had depicted a gunshot wound

23

on the incorrect shoulder (ECF No. 11-5 at 79). Both the original and corrected reports were admitted into evidence. On cross-examination, counsel questioned Dr. Levaughn about the differences between the reports and discrepancies between the reports and a photograph (ECF No. 11-5 at 87-89). However, Dr. Levaughn unequivocally testified that the cause of death did not change (ECF No. 11-5 at 89). Once again, this is an issue of strategic decision making, which does not provide a basis for habeas relief. Further, as the cause of death did not change, McKnight has failed to demonstrate any prejudice from his counsel's allegedly deficient performance. Therefore, Ground 29 is without merit.

McKnight also alleges that counsel was ineffective for failing to object to several of the prosecution's statements during closing, including statements that held McKnight to "answer" for other crimes (Ground 8), statements "vouching" for a state witness (Ground 18), and statements containing allegedly "well known false misleading information." Under Mississippi law, "[a]ttorneys on both sides are generally afforded broad latitude during closing arguments." *Moffett v. State*, 137 So. 3d 247, 269 (Miss. 2014) (citing *Wright v. State*, 958 So. 2d 158, 161 (Miss. 2007)). As long as the prosecution's arguments were related to the evidence and the issues involved, McKnight's counsel would not have had grounds to make an objection. *Id.* (quoting *Brewer v. State*, 704 So. 2d 70, 72 (Miss. 1997)).

McKnight first argues that counsel should have objected to the prosecution's statement that McKnight fled to a different state after the crime and stalked the victim. The "stalking" referred to in closing was that McKnight shot at the victim

24

from the car and then chased him into the woods (ECF No. 11-6 at 21). This argument was supported by the trial testimony. The prosecution also stated during closing that Hill testified the last time he spoke to McKnight, McKnight had said he was on his way to Oklahoma and may go to California (ECF No. 11-6 at 30, 32). That testimony is also supported by the record. As such, counsel's objection would have been meritless. Further, McKnight was never "held to answer" for fleeing arrest or stalking, as he was never indicted or faced a trial on those charges. As such, McKnight is not entitled to habeas relief on Ground 8.

In Ground 18, McKnight argues that his counsel should have objected to the state "vouching" for Hill. He argues that the prosecution wanted the jury to believe that Hill voluntarily turned himself in two days after the murder. In closing, the prosecution did not state that Hill turned himself in two days later, but the testimony does support that Hill voluntarily turned himself in and gave various statements to the police. Given the wide latitude state law affords attorneys during closing and given the deference afforded to state court determinations of ineffective assistance of counsel, McKnight is not entitled to relief on Ground 18.

For the same reasons, McKnight's claim for relief in Ground 26 also fails. He argues that counsel should have objected to the prosecution's summation of the evidence, particularly with regards to the relationship between Hill, McKnight's son, and the victim, as well as the testimony offered by Bruce Williams and Harris. McKnight's argument is simply not an accurate reflection of the record. The state was allowed to summarize the evidence in closing arguments, and they did not

misstate the evidence. For example, McKnight takes issue with the prosecution's statement in closing that the victim saw Harris after church (ECF Nos. 5 at 74 & 11-6 at 23). However, she testified that the victim asked to borrow money from her after he left church (ECF No. 11-4 at 55). McKnight's counsel was not ineffective for failing to object to the state's summation of the evidence when the summation did not go outside the record. Therefore, Ground 26 is also without merit.

### e.    Discovery Grounds

In McKnight's next claim for ineffective assistance of counsel, he alleges that counsel "prejudicially and maliciously withheld requested discovery from him pretrial, from the trial court and the jury during trial, and from Mr. McKnight's appellate counsel post trial." Although McKnight repeatedly argues that there is exculpatory evidence that he now has or now seeks, he has presented nothing that convinces this Court that he has been denied such evidence, either by his counsel or by the prosecution. McKnight's sweeping statements (ECF Nos. 5 & 21-2) do not warrant habeas relief. Additionally, he stated on the record that he "got the discovery papers" (ECF No. 11-3 at 75). His counsel also stated that he had shared all the evidence with McKnight (ECF Nos. 11-3 at 77 & 11-6 at 94).

The trial court found that "all discovery has been provided to the defendant through his attorneys of record in an appropriate and timely manner and there has been no allegation to the contrary" (ECF No. 11-6 at 97). The Mississippi Supreme Court had the opportunity to review McKnight's claim of ineffective assistance of counsel as it relates to discovery matters. In light of the record, particularly the

finding that discovery was produced, the Mississippi Supreme Court's decision is not an unreasonable application of the law. McKnight is not entitled to habeas relief on Ground 11.

### f.      Jury Instruction Grounds

In Ground 21, McKnight argues that counsel was ineffective for failing "to pursue a cautionary accomplice testimony instruction and corroboration instruction." Counsel argued that an accomplice instruction should have been given (ECF No. 11-6 at 406). As such, this portion of the argument is without merit. McKnight does not present any argument concerning the type of "corroboration" instruction counsel should have requested; he merely argues that Hill's trial testimony was uncorroborated. However, the trial judge found that Hill testimony was corroborated, citing that as an additional reason to deny the accomplice instruction (ECF No. 11-6 at 408). Further, McKnight has failed to show that a deficiency in the jury instruction caused prejudice. As such, the state court decision that counsel was not ineffective with respect to the requested jury instructions is not unreasonable. McKnight is not entitled to habeas relief on Ground 21.

### g.      Witness Grounds

McKnight argues in Ground 23 that trial counsel should have investigated and procured various witnesses for his defense. However, "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) (quoting *Sayre v. Anderson*, 238 F.3d 631, 635-36

(5th Cir. 2001)) (alteration in original). To prevail on a claim of ineffective assistance of counsel for failure to call certain witnesses, McKnight "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)). Although McKnight names several potential witnesses and sets out potential testimony that may have been favorable, McKnight has not shown that any of the witnesses were available or would have testified (ECF No. 21-2 at 150-57). In fact, McKnight even refers to these prospective witnesses as "potentially available" (ECF No. 21-2 at 161). Therefore, McKnight is not entitled to habeas relief on Ground 23.

### h.     "Promises" Grounds

McKnight makes his final argument concerning the ineffective assistance of trial counsel in Ground 30. He alleges that counsel was ineffective for failing "to fulfill promises made to the jury in opening statements." Essentially, he uses this ground to re-argue his allegations that counsel should have presented various pieces of evidence or made objections to various state witnesses. The Court has already determined that McKnight is not entitled to habeas relief on those grounds. Further, counsel's opening statement "emphasized [McKnight's] most critical defense theory," and it was a reasonable theory of defense. *Castillo v. Stephens*, 640 Fed. App'x 283, 292 (5th Cir. 2016). The mere fact that counsel was not successful in

convincing the jury of this theory does not make counsel ineffective. *See Strickland* 466 U.S. at 689. McKnight is not entitled to habeas relief on Ground 30.

### i. Appellate Counsel Grounds

McKnight also alleges that he received ineffective assistance of counsel on appeal. He argues that appellate counsel misstated various facts to the Mississippi Court of Appeals (Ground 13) and erred in failing to raise several issues before the Court of Appeals—whether trial counsel was ineffective for failing to fulfill the promises made in opening statements (Ground 31); whether he was denied due process when the state introduced allegedly perjured testimony (Ground 33); whether McKnight was denied the right to confront witnesses against him due to inadmissible hearsay (Ground 37); whether trial counsel colluded with a detective (Ground 39); and whether trial counsel was ineffective for not requesting a continuance after learning of a surprise state witness (Ground 41).

First, McKnight argues that appellate counsel was ineffective for failing to investigate the "true facts" of the case and for misstating the facts in the appellate brief. In his reply, McKnight alleges various "misstatements" of appellate counsel. First, he argues that appellate counsel stated the first assigned trial judge signed a warrant for McKnight's cell phone records when he instead signed a record for Hill's phone records (ECF No. 21-2 at 141). However, because the judges in that district agreed that when one judge signed warrants in a case, the other judge would preside over the trial, and because McKnight was not prejudiced by the first judge's recusal (Ground 15), this misstatement did not prejudice McKnight.

The other misstatements concern when Bruce Williams saw a gun, Mary Marsalis' relationship with McKnight and when she saw McKnight, whether Terry Williams was driving or walking down the street at the time of the incident, and the scope of Detective Sullivan's testimony (ECF No. 21-2 at 142-46). McKnight fails to allege how he was prejudiced by these misstatements. Further, these statements either involve only minor, collateral issues or they involve differing perceptions of the record, instead of actual misstatements. Therefore, the state court decision that McKnight was not denied effective assistance on appeal is not unreasonable, and McKnight is not entitled to habeas relief on Ground 13.

With respect to McKnight's allegations that appellate counsel should have raised particular issues, appellate counsel is not required "to raise every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Further, when the alleged trial error did not result in prejudice, an individual will not be prejudiced by an alleged appellate error on the same issue. *Amador v. Quarterman*, 458 F.3d 397, 411 (5th Cir. 2006) (quoting *Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1999)). In this case, however, appellate counsel raised the issue of inadmissible hearsay (ECF No. 11-10 at 92-93). Therefore, Ground 37 is clearly without merit. Grounds 31 and 41 relate to issues McKnight also raised in this petition with respect to his trial counsel (Grounds 30 and Ground 40). The state court's determination that McKnight did not receive ineffective assistance of counsel at trial on these issues was not unreasonable, and as such, the determination that he did not receive ineffective assistance of counsel on appeal due

to appellate counsel's failure to raise trail counsel's performance cannot be unreasonable. McKnight is not entitled to habeas relief on Grounds 31 or 41.

In Ground 33, McKnight argues that appellate counsel should have argued that the state "suborned perjury and used perjured testimony to obtain convictions." McKnight does not reference any specific instance of perjury with respect to this Ground, and the record does not reflect any obvious instances of perjury. As such, McKnight's argument is nothing more than a conclusory allegation; therefore, Ground 33 does not provide a basis for federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross*, 694 F.2d at 1012).

McKnight's final argument with respect to his appellate counsel is that counsel should have argued that his trial counsel worked in concert with Sullivan to create "a false impression of the facts." In McKnight's Amended Petition (ECF No. 5), he merely refers the Court to Ground 38 for the supporting facts. McKnight did not include Ground 38 in his Amended Petition. However, it is clear from McKnight's reply (ECF No. 21-2 at 191-99) that Ground 38 would have been another ineffective assistance of trial counsel claim. Therefore, Ground 39 fails for the same reasons as Grounds 31 and 41. Further, McKnight's allegations that trial counsel colluded with Sullivan to improperly aid the state is belied by trial counsel's cross-examination (ECF No. 11-5 at 311-19). McKnight is not entitled to relief on Ground 39.

### j.    <u>Ground 35</u>

In McKnight's final ground for relief, he argues that he "was denied due

process under the Fourteenth Amendment to the United States Constitution when the Court of Appeals ruled the hearsay testimony of state[']s witness Katrina Harris [w]as harmless error." He argues that this testimony influenced the jury verdict and could not be harmless (ECF No. 21-2 at 172).[2] Harris testified at trial that the victim told her that if something happened to him, McKnight did it. The trial judge allowed the testimony pursuant to Mississippi Rule of Evidence 803(3), the hearsay exception for then existing state of mind. The Mississippi Court of Appeals disagreed, holding that it was inadmissible hearsay. However, it concluded that the admission was harmless error in light of the other evidence supporting the verdict. *McKnight*, 187 So. 3d at 650-51.

Generally, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair," which occurs when the trial "has been 'largely robbed of dignity due a rational process.'" *Allen v. Vannoy*, 659 Fed. App'x 792, 800 (5th Cir. 2016) (quoting *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011); *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999)). Further, even if a state court "erred in concluding that the State's errors were harmless, . . . habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003)).

Although McKnight argues that the hearsay rendered the trial

---

[2] The arguments in his Reply concerning perjury, objections counsel should have made, and discovery (ECF No. 21-2 at 167-89) will be disregarded, as the Court has already determined that those issues are without merit.

fundamentally unfair, the Mississippi Court of Appeals cited numerous pieces of evidence that supported the conviction. This Court agrees that there was sufficient admissible evidence to support the jury verdict. *McKnight*, 187 So. 3d at 651. Therefore, the Mississippi Court of Appeals' determination that the admission of the hearsay statement was harmless error is not an unreasonable application of federal law. McKnight is not entitled to relief on Ground 35.

## III. RECOMMENDATION

Based on the above analysis, the undersigned recommends that James Douglas McKnight's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus be denied and this case dismissed.

## IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within

fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 11th day of February, 2019.

*s/ John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE